126 So.2d 142 (1961)
STATE of Florida ex rel. THE FLORIDA BAR, Complainant,
v.
Stephen L. RUSKIN, Respondent.
Supreme Court of Florida.
January 18, 1961.
Fred R. Baisden, Miami Beach, for The Florida Bar, complainant.
Stephen L. Ruskin, Miami, in pro. per., for respondent.
THORNAL, Justice.
Respondent Ruskin seeks review of a judgment of the Board of Governors of The Florida Bar disbarring him from the practice of law.
The sole matter for our consideration is the insistence of Ruskin that the judgment of disbarment is unduly severe in view of the circumstances reflected by the record.
There is no factual conflict. Ruskin admits the misprisions charged against him by the Bar. During a period of several months in 1958 Ruskin commingled with his own funds substantial sums belonging to various clients. The commingled funds were used by the lawyer for his own private purposes. At hearings before the Grievance Committee, and later before the Referee, Mr. Ruskin confessed the wrongs. In mitigation he explained that during the period involved he was undergoing extremely severe mental and nervous pressures. *143 He had "over-extended" himself in making financial commitments to several speculative business enterprises. His personal domestic life was on the verge of collapse. At one point pressures were so severe that he seriously considered self-destruction. Between time of the hearing by the Grievance Committee and the hearing before the Referee, the lawyer apparently became a changed man. Full restitution was made to all clients. The record suggests that no client has suffered any financial loss. Through a psychiatric counseling service the lawyer has recovered his composure and mental equilibrium. His domestic affairs have been happily set aright. The Grievance Committee commended Mr. Ruskin for his candor and cooperation. The Referee, after hearing the man testify, concluded that he had sufficiently weathered the storm and had earned some mitigation of judgment. The Referee recommended a severe private reprimand and a period of one year on probation in the practice. Upon review the Board of Governors agreed with the findings of the Referee to the effect that respondent had been guilty of serious misconduct. It disagreed as to the disciplinary order and instead of probation entered a judgment of disbarment. We are now required to review this judgment with the contention that it is unduly severe under the circumstances.
We preface our disposition of the matter with the observation that the respondent, with considerable courage and fortitude, personally appeared at the Bar of this Court in a spirit of repentance seldom evidenced in cases of this kind. His frankness and candor in discussing his predicament and his apparent sincerity in the assurances which he gave regarding his future conduct all merit the commendation of the Court. However, the welfare of the public, which is always a silent litigant in matters of this type, cannot be disregarded in our deliberations on the effect of the conduct of an errant member of the Bar.
Few breaches of ethics are as serious as the commingling of a client's funds and the use thereof for the lawyer's private purposes. The funds of a client in the custody of his lawyer should be guarded and protected as securely as if the same were in the custody of the community's strongest financial institution. The relationship between a lawyer and a client is of the highest degree of integrity and fidelity. In handling his client's money the lawyer should guard it with much greater diligence and caution than he does his own. It is perfectly obvious that Mr. Ruskin had committed extremely serious violations of the Canons of Ethics. For this reason, despite his impressive appeal for leniency, we cannot agree that the recommendation of the Referee was adequate in the light of the breaches involved.
We have said however, that we have come to regard disbarment as the most severe disciplinary prescription that can be imposed on a lawyer. The cases generally regard a judgment of disbarment as one reserved for the most infamous type of misprision and as justifiable in those instances where the possibility of the lawyer's rehabilitation and restoration to an ethical practice are the least likely. Drinker, Legal Ethics, p. 46; State ex rel. The Florida Bar v. Dawson, Fla. 1959, 111 So.2d 427. This interpretation of a disbarment judgment has not always been the rule of this State. The fact remains that since the judgment in the case last cited we have generally regarded disbarment as involving an element of finality which precludes the likelihood of the reinstatement of the offending lawyer. While we realize that under the Integration Rule, 31 F.S.A., as presently written, the lawyer who has been disbarred may at any time apply for reinstatement, experience has shown that it usually has been many years after disbarment before a reinstatement petition gains any substantial support. It is for this reason, among others, that we have felt that the type of judgment entered in State ex rel. The Florida Bar v. Dawson, supra, and *144 which we hereafter enter herein, gives due recognition to mitigating circumstances, but at the same time administers appropriate disciplinary action. It imposes upon the offending lawyer the responsibility of restoring the confidence of the public as well as the respect of his colleagues in the profession. In other words, the opportunity for reinstatement should stand as a goal to the disciplined lawyer to re-establish himself in the profession.
A mere suspension for a fixed period of time, with the assurance of automatic reinstatement at the end of the prescribed period, does not impose upon the lawyer the responsibility of taking affirmative action during the period of suspension in order to gain readmittance at the end of the period. In other words, readmission being automatic, no burden is placed upon the lawyer to justify his re-entrance by his own conduct. It was for all of these reasons that we employed the type of judgment which we announced in State ex rel. The Florida Bar v. Dawson, supra, and which we have employed in similar situations. This is not an altogether novel viewpoint. Drinker, Legal Ethics, p. 49; State v. Cannon, 199 Wis. 401, 226 N.W. 385; In re McDonald, 204 Minn. 61, 282 N.W. 677, 284 N.W. 888; Breslin's Appeal, 316 Pa. 392, 175 A. 378. As early as 1930, we ourselves approved a similar judgment when a lawyer was suspended for a period of time and thereafter until he made restitution of certain misappropriated funds. Stalnaker v. State, 102 Fla. 638, 136 So. 318; In re Petition of Stalnaker, 150 Fla. 853, 9 So.2d 100; See also, State ex rel. The Florida Bar v. Rhynard, Fla. 1959, 116 So.2d 417; State ex rel. The Florida Bar v. Brown, Fla. 1959, 111 So.2d 668.
In prescribing the judgment hereafter announced we take into consideration that our order should give due regard to the public interest in such matters and should be fair to the accused attorney. It should not reflect a retributive penalty. Its objective should be to correct the wayward tendency in the accused lawyer while offering to him a fair and reasonable opportunity for rehabilitation if such is apparently possible. At the same time it should be sufficiently severe to serve as a deterent warning to others similarly minded. State ex rel. The Florida Bar v. Murrell, Fla. 1954, 74 So.2d 221; State ex rel. The Florida Bar v. Evans, Fla. 1957, 94 So.2d 730.
In the instant case the accused has made full restitution for the misused funds. This is an element in mitigation but it is not conclusive. In addition, however, he has apparently exercised every opportunity for self-discipline since the offenses were committed. He has made a personal effort to regain his self-respect and to make amends for the wrongdoings. He has given every possible indication of repentance which suggests that his offenses will not likely happen again. In view of all of these factors, the judgment of disbarment is not approved. In lieu thereof, the respondent Stephen L. Ruskin shall be and he is hereby suspended from the practice of law for a period of six months from the filing of this opinion and continuously thereafter until he shall have paid the cost of this proceeding in the amount of $99.50, and further, continuously thereafter until in accord with Art. XI, subd. 5(i) of the Integration Rules, he shall demonstrate to the Board of Governors of the Florida Bar, and to this Court that he is entitled to be reinstated in the practice of law upon making a showing required by the last cited Rule. Respondent shall not be entitled to apply for reinstatement until at least six months after the filing of this opinion. To this extent it might appear that this judgment is more severe than a judgment of total disbarment. We think, however, that it must be read in the light of our comments above. Until reinstatement by order of this Court, respondent shall not, directly or indirectly, engage in the practice of law.
It is so ordered.
THOMAS, C.J., and TERRELL, DREW and O'CONNELL, JJ., concur.