DREW, Justice
(concurring specially).
There is not the slightest doubt that the name of this respondent should be stricken from the roll of attorneys of this State. I question, however, the manner in which the majority opinion accomplishes this result.
In two cases we have discussed at length the question of whether in cases of this kind the judgment shall be one of suspension or disbarment.[1] In those cases and particularly in the Ruskin case, we emphasized the fact that “we have come to regard disbarment as the most severe disciplinary prescription that can be imposed on a lawyer.” We also stated “[t]he cases generally regard a judgment of disbarment as one reserved for the most in *309 famous type of misprision and as justifiable in those instances where the possibility of the lawyer’s rehabilitation and restoration to an ethical practice are the least likely.” We particularly pointed out the fact that such interpretation has not always been the rule of this state but that such conclusion was supported by such authorities as Drinker and accorded with our view of the proper solution of this problem.
These proceedings were instituted prior to the adoption of the recent revision and codification of the integration rule regarding disciplinary matters and is governed by the former rule. Under the former rule, one against whom a judgment of disbarment had been entered could immediately apply for reinstatement if he chose and could renew such petition not oftener than once each year. One suspended from practice for a definite period of time under the former rule was automatically reinstated upon the expiration of the period of suspension. Disbarment and term suspension were the judgments usually entered prior to State v. Dawson.[2] In my opinion both were unsatisfactory and failed to accomplish the real purpose of disciplinary proceedings against members of the Bar.
The purpose of such proceedings is to preserve the purity of the courts. No private rights except those of the accused at-' torney are involved.[3] Moreover, such proceedings are neither criminal nor civil in nature and “should not reflect a retributive penalty.”[4] Except in the most extreme cases involving “the most infamous type •of misprision” and where the record reflects and the referee or Board of Governors finds little or no likelihood that the accused attorney will ever again resume his place as an honorable member of his great profession should the ultimate judgment of disbarment be rendered. A discussion of the proposition of whether the judgment should be one of disbarment or suspension of the indefinite type discussed and used in the Dawson and Buskin cases and in others since that time involves more semantics than substance. This latter type of disciplinary judgment is premised on the fact that few, if any, men are beyond redemption, a principle which for nearly 2,000 years has been firmly imbedded in our Christian concepts. Such a judgment removes unfaithful stewards from the practice of the law just as completely and certainly as one using the word disbar or disbarment and such judgment remains in force until, as stated in these orders, the accused “shall demonstrate to the Board of Governors and to this Court that he is entitled to be reinstated in the practice of law” and has paid such sums of money or performed such other positive actions as the judgment may direct. I think such judgments fully protect the public, the Courts and the Bar, (even more than inflexible judgments of disbarment) serve the purposes intended and at the same time hold out hope to those who have gone astray. The records of our profession and of mankind generally are replete with histories of great men who had been guilty of wrongdoing at some point in their lives.
My thoughts in this case are not prompted or influenced by the small sums of money involved in this case. The principle ' is the same whether the amounts be great or small. The type of judgments heretofore announced by this Court in cases of this type are more appropriate to the circumstances and, in my humble judgment, more effectively accomplish the purpose intended. I feel that this Court and those entrusted with the administration of disciplinary proceedings should adhere to *310 the pronouncements of this Court in the Dawson and Ruskin cases and repeated here.
I would suspend the respondent from the practice of law for the term of eighteen months commencing with the date of this order and continuously thereafter until he shall have paid the cost of the proceedings in this case and in the former case and shall have repaid all sums of money wrongfully received from his clients and converted to his use as shown by the records in these cases, and continuously thereafter until, in accordance with the Integration Rule now in effect, he shall demonstrate to the Board of Governors and this Court that he is entitled to be reinstated in the practice of law.

. State ex rel. Florida Bar v. Dawson, Fla. 1959, 111 So.2d 427; State ex rel. Florida Bar v. Ituskin, Fla.1961, 126 So.2d 142.

. There was, of course, the occasional public or private censure or reprimand.

. See Application of Harper, Fla.1956, 84 So.2d 700, 54 A.L.R.2d 1272, where the historical growth and development of disbarment proceedings are discussed at length.

. Mr. Justice Tliornal in the Buskin case, footnote 1, supra.